UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| In re HUFFY CORPORATION SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Lead Case No. 3:05cv0028

<u>CLASS ACTION</u>

Judge Walter Herbert Rice
Magistrate Judge Sharon L. Ovington

CORRECTED STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE

ROBBINS GELLER RUDMAN
& DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
S. ASHAR AHMED
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
Facsimile: 415/288-4534
Email: dennish@rgrdlaw.com
– and –
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423
Email: elleng@rgrdlaw.com

Lead Counsel for Plaintiffs

FARUKI IRELAND & COX P.L.L.
D. JEFFREY IRELAND (0010443)
MARTIN A. FOOS (0065762)
ERIN E. RHINEHART (0078298)
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: 937/227-3710
Facsimile: 937/227-3717
Email: djireland@ficlaw.com

Attorneys for Defendants

[Caption continued on following page.]

508334_3

STRAUSS & TROY
RICHARD S. WAYNE (0022390)
WILLIAM K. FLYNN (0029536)
THOMAS P. GLASS (00623820)
Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone:  513/621-2120
Facsimile:  513/241-8259
Email:  rswayne@strausstroy.com

Liaison Counsel

This Stipulation of Settlement Agreement and Release dated May 12, 2010 (the "Stipulation"), is made and entered into pursuant to Rule 23 of the Federal Rules of Civil Procedure and contains the terms of a settlement by and among the following Settling Parties to the above-captioned Litigation: (i) Lead Plaintiffs UNITE HERE National Retirement Fund and Harry L. Ross (on behalf of themselves and each of the Class Members, as defined in this Stipulation); and (ii) Defendants Don R. Graber, Paul R. D'Aloia, Robert W. Lafferty, and Timothy G. Howard, by and through their respective undersigned counsel of record in the Litigation. Huffy Corporation ("Huffy" or the "Company") is not a Defendant to this Litigation; it declared bankruptcy in October 2004.

This Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims against the Released Persons, upon and subject to the terms and conditions in this Stipulation and subject to the approval of this Court.

Throughout this Stipulation, any capitalized terms not immediately defined are defined in accordance with ¶¶1.1-1.40.

## I.   THE LITIGATION

A.      On or about January 2005, four securities class action complaints were filed in the United States District Court for the Southern District of Ohio, Western Division (Dayton) (the "Court") on behalf of purchasers of Huffy publicly-traded securities during defined periods of time, alleging violations of the Securities Exchange Act of 1934.[1] By Order dated April 7, 2005, the Court

---

[1]      Those four complaints were captioned: *Dean Gladow v. Don R. Graber, et al.* (filed on Jan. 24, 2005), No. 3:05cv0028, United States District Court for the Southern District of Ohio, Western Division (Dayton) (Rice, J.); *Gene Dunne v. Don R. Graber, et al.* (filed Feb. 2, 2005), No. 3:05cv0044, United States District Court for the Southern District of Ohio, Western Division (Dayton) (Rose, J.); *Sean Cunningham v. Don R. Graber, et al.* (filed Feb. 16, 2005), No. 3:05cv0064, United States District Court for the Southern District of Ohio, Western Division (Dayton) (Rose, J.); and *Durham Singletary v. Don R. Graber, et al.* (filed Mar. 4, 2005), No.

consolidated these actions under the caption above, appointed Lead Plaintiffs, and approved Lead Plaintiffs' choice of Lead and Liaison Counsel.

      B.      On July 29, 2005, Lead Plaintiffs filed their Complaint against Defendants alleging, among other things, that Defendants caused Huffy to issue materially false and misleading statements regarding Huffy's financial condition prior to its acquisition of Gen-X Sports, Inc. ("Gen-X") in 2002; Gen-X's pre-acquisition financial condition; the performance of Gen-X following its acquisition by Huffy; Huffy's financial condition; and the extent and significance of Gen-X's problems. Lead Plaintiffs further alleged that the truth regarding Huffy's financial condition and performance was slowly revealed to the market through a series of partial disclosures beginning in late 2003 and ending in August 2004.

      C.      On September 27, 2005, Defendants moved to dismiss the Complaint which was opposed by Lead Plaintiffs on December 2, 2005. On September 17, 2008, the Court issued its Decision and Entry Sustaining in Part and Overruling in Part Defendants' Motion to Dismiss. On October 7, 2008, Defendants filed their Answer to the Complaint, denying its material allegations and alleging several affirmative defenses. The Parties then began formal discovery.

      D.      Document requests were served on Defendants and subpoenas resulted in document production by over forty (40) third parties. Approximately one million total pages of documents were produced and reviewed by the Parties. The Parties retained experts and took multiple depositions each.

      E.      On March 6, 2009, Lead Plaintiffs filed their motion for class certification. Defendants opposed that motion on June 5, 2009, and Lead Plaintiffs filed their reply on September

---

3:05cv0087, United States District Court for the Southern District of Ohio, Western Division (Dayton) (Rice, J.).

508334_3

4, 2009. Defendants filed a Sur-Reply on December 18, 2009, and Lead Plaintiffs filed their Sur-Sur-Reply on January 22, 2010.

F.      On June 5, 2009, Defendants moved for summary judgment based on Lead Plaintiffs' lack of standing, and for partial summary judgment on Lead Plaintiffs' allegations regarding the April 16, 2002 and June 17, 2002 Huffy press releases. Defendants were also preparing to file additional motions for summary judgment on all of Lead Plaintiffs' claims.

G.      In an effort to resolve the Litigation, the Parties attended two mediations before the Honorable Daniel Weinstein (Ret.). The initial settlement meeting on July 7, 2009 did not resolve the case, and the Litigation continued. On January 13, 2010, after additional discovery, including depositions of the Defendants, the Parties participated in a second mediation session before Judge Weinstein. Following that mediation session, and further discussions among the Parties and the mediator, the Parties reached an agreement-in-principle to settle the Litigation on the terms set forth in this Stipulation.

H.      On February 9, 2010, the Parties filed a motion to hold in abeyance all pending motions and deadlines. On February 10, 2010, the Court granted the Parties' motion to hold in abeyance all pending motions and deadlines until finalization of the Parties' settlement agreement and approval by the Court.

## II.    CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

A.      Lead Counsel, on behalf of Lead Plaintiffs, submit that they have conducted a thorough investigation relating to the claims and the underlying events and transactions alleged in the Complaint. Lead Plaintiffs believe that the claims asserted in the Litigation have merit. However, Lead Plaintiffs and Lead Counsel recognize the expense, length, and complexity of continued proceedings necessary to prosecute the Litigation against Defendants through trial and appeal. Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and

- 3 -

the risk of litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Counsel also are mindful of the inherent problems of proof of, and possible defenses to, the allegations and claims asserted in the Litigation.

       B.      Accordingly, Lead Plaintiffs, through their counsel, conducted discussions and arm's-length negotiations with counsel for Defendants with respect to a compromise and settlement of the Litigation, with a view to settling the issues in dispute with Defendants and achieving the best relief possible consistent with the interests of the Class.

       C.      Based upon their investigation, Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to Lead Plaintiffs and the Class, and in their best interests. Lead Counsel and Lead Plaintiffs believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class and each of the Class Members, and have agreed to settle the claims raised in the Litigation pursuant to the terms and provisions of this Stipulation, after considering: (i) the benefits that Lead Plaintiffs and the members of the Class will receive from the settlement of the Litigation; (ii) the attendant risks of continuing litigation; and (iii) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

## III.    NO ADMISSION OF WRONGDOING BY DEFENDANTS

       A.      Defendants deny that they have committed or intended to commit any wrongdoing or violations of law arising out of any of the conduct, statements, acts, or omissions alleged in the Litigation, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law. Defendants further deny that they made any material misstatements or omissions in Huffy's public filings, press releases, or other public statements, that Lead Plaintiffs or the Class, as defined in this Stipulation, have suffered any damages, or that Lead Plaintiffs or the Class were harmed by any conduct alleged in the Litigation or that could have been alleged as part of the

- 4 -

Litigation. Each Defendant denies the allegations against him concerning any alleged wrongdoing or violations of law, and further asserts that, at all relevant times, he complied with all applicable laws, and acted in good faith and in a manner he reasonably believed to be in the best interests of the Company and its stockholders.

B.      Defendants, however, recognize the uncertainty and the risk of the outcome of any litigation, especially complex securities litigation, and the difficulties and substantial burdens, expense, and length of time necessary to defend this proceeding through the conclusion of discovery, summary judgment motions, a possible trial, possible post-trial motions, and possible appeals. To eliminate the burden and expense of further litigation, Defendants desire to settle the Litigation on the terms and conditions stated in this Stipulation and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability, or damages to Lead Plaintiffs and the Class.

C.      This Stipulation and all negotiations, discussions, and proceedings in connection with it shall not be deemed or constitute a presumption, concession, or an admission by any Party of any fault, liability, or wrongdoing by them, and shall not be interpreted, construed, deemed, involved, offered, or received in evidence or otherwise used by any Person in the Litigation, or in any other action or proceeding, whether civil, criminal, or administrative (including, but not limited to, the United States Securities and Exchange Commission and the United States Department of Justice), or in any other tribunal, except in connection with any proceeding to enforce the terms of this Stipulation. If the Settlement does not receive Final approval of the Court, the Parties shall revert to their respective litigation positions as of January 12, 2010, and all negotiations, discussions, and proceedings in connection with the Stipulation will be treated as though they never existed.

- 5 -

508334_3

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE, IT IS STIPULATED AND AGREED, by and among Lead Plaintiffs (on behalf of themselves and each of the Class Members) and Defendants, by and through their respective undersigned counsel or attorneys of record, that without any admission or concession on the part of Lead Plaintiffs of any lack of merit of the Litigation whatsoever, and without any admission or concession by Defendants of any liability or wrongdoing or lack of merit in the defenses to the Litigation whatsoever, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the Settling Parties from the Settlement, that all Released Claims as against the Released Persons shall be finally, fully, and forever compromised, settled, and released and the Litigation shall be dismissed with prejudice as to all Released Persons, upon and subject to the following terms and conditions.

### 1.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" or "Litigation" means all of the claims asserted in the four complaints referred to in footnote 1 of this Stipulation and all of the claims alleged in the consolidated putative shareholder class action Complaint captioned *In re Huffy Corporation Securities Litigation*, Lead Case No. 3:05cv0028 filed in the United States District Court for the Southern District of Ohio, Western Division (Dayton).

1.2    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.3    "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.4    "Class" and "Class Members" mean all persons and entities who purchased Huffy's publicly traded securities between April 16, 2002 and August 13, 2004, inclusive. Excluded from the Class are: (1) Huffy and its subsidiaries, divisions, successors, assigns, and creditors, including

secured and unsecured creditors in Huffy's bankruptcy; (2) all Defendants in the Litigation; (3) all current and former officers and directors of Huffy; (4) all current and former officers and directors of Gen-X; (5) all Gen-X officers, directors, and employees who were granted Huffy stock or stock options as a result of the acquisition of Gen-X by Huffy on or about September 19, 2002; (6) all pre-acquisition Huffy or Gen-X shareholders in which any former Huffy or Gen-X officer or director employed prior to, or contemporaneous with, the acquisition, or who was otherwise involved in any way with the acquisition, has or had a controlling interest;[2] (7) all immediate family members of any Defendant, former officer, director or employee, or other person or entity mentioned above; (8) all legal representatives, heirs, successors, or assigns of any Person excluded from the Class; and (9) all entities in which any Defendant or excluded Person has or had a controlling interest or of which he, she or it is a beneficiary. Also excluded from the Class are any putative Class Members who timely and validly exclude themselves from the Class in accordance with the requirements set forth in the Notice.

1.5    "Class Period" means the period between April 16, 2002 and August 13, 2004, inclusive.

1.6    "Complaint" means the Consolidated Class Action Complaint for Violation of the Federal Securities Laws, which was filed in this Litigation on July 29, 2005.

1.7    "Contributing Insurers" means Federal Insurance Company and Zurich American Insurance Company and their respective successor(s).

1.8    "Defendants" means Don R. Graber, Robert W. Lafferty, Timothy G. Howard, and Paul R. D'Aloia. Huffy Corporation is not a Defendant.

---

[2]    Including, but not limited to, DMJ Financial, Inc., K & J Financial, Inc., DLS Financial, Inc., Kenneth Finkelstein Family Trust, James Salter Family Trust, The Forzani Group Ltd., Osgoode Financial, Inc., Collective Brands, Inc., and Hilco Consumer Capital Corp.

508334_3

1.9    "Defendants' Affiliates" means any and all of Defendants' and Huffy's respective

present, former, and future officers, directors, employees, managers, members, managing members,

fiduciaries, managing directors, agents, managing agents, attorneys, legal counsel, advisors and

consultants (including, but not limited to, expert advisors and consultants who participated in any

way in the Litigation), insurers and co-insurers (including, but not limited to, the Insurers and

Contributing Insurers as defined in this Stipulation), reinsurers, accountants, auditors, trustees,

underwriters, financial advisors, commercial bank lenders, investment bankers, associates,

representatives, affiliates, parents, subsidiaries, partnerships, member firms, partners, joint ventures,

limited liability companies, corporations, divisions, shareholders, principals, trusts, foundations,

family members, beneficiaries, distributors, heirs, executors, personal representatives, estates,

administrators, predecessors, successors and assigns, and their respective former, current and future

direct or indirect equity holders, controlling persons, stockholders, general or limited partners or

partnerships, or assignees and including, but not limited to, any directors, officers, agents, partners,

members, managers, or employees of any of the foregoing.

1.10    "Effective Date" means the date upon which the Settlement contemplated by this

Stipulation shall become effective, as set forth in ¶10.1 of this Stipulation.

1.11    "Escrow Agent" means Robbins Geller Rudman & Dowd LLP or its successor(s).

The Escrow Agent shall maintain the Settlement Fund in a segregated escrow account not available

to the creditors of the Escrow Agent and shall not disburse any amount from the escrow account

except as authorized by this Stipulation, or an order of the Court.

1.12    "Fee and Expense Application" means the application by Lead Counsel to the Court

for an award from the Settlement Fund of attorneys' fees and expenses incurred in connection with

prosecuting the Litigation in an amount to be approved by the Court, and a request by Lead Plaintiffs

- 8 -

for reimbursement of expenses incurred in representing the Class, pursuant to 15 U.S.C. §78u-4(a)(4).

1.13 "Final" means any order of the Court that represents a final binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes final when (a) if no appeal has been filed, the prescribed time for commencing any appeal has expired; or (b) if an appeal has been filed, either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Stipulation, an "appeal" includes any appeal as of right, discretionary appeal, interlocutory appeal, proceeding involving a writ of certiorari and/or a writ of mandamus, and any other proceeding of like kind. Any proceeding, order or appeal relating solely to any Plan of Allocation or to any Fee and Expense Application shall not in any way delay or preclude the judgment in this Litigation from becoming Final.

1.14 "Huffy" means Huffy Corporation. Huffy filed for Chapter 11 bankruptcy protection on October 20, 2004 and is, therefore, not a party to the Litigation.

1.15 "Insurers" means Federal Insurance Company, Zurich American Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, and Liberty Mutual Insurance Company (Liberty International Underwriters), and their respective successor(s).

1.16 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP, formerly known as Coughlin Stoia Geller Rudman & Robbins LLP, or its successor(s).

1.17 "Lead Plaintiffs" means UNITE HERE National Retirement Fund and Harry L. Ross.

1.18 "Liaison Counsel" means Strauss & Troy.

1.19    "Net Settlement Fund" means the Settlement Fund, less Notice and Administration Costs, attorneys' fees and expenses awarded by the Court to Plaintiffs' Counsel and the Lead Plaintiffs.

1.20    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, which is to be sent to all Class Members, substantially in the form attached to this Stipulation as Exhibit A-1, or as modified pursuant to agreement of the Parties or order of the Court.

1.21    "Notice and Administrative Costs" means all reasonable costs and expenses of notice to Class Members, and administration of the Settlement Fund, escrow fees, custodial fees, Taxes and Tax Expenses, and expenses incurred in connection with processing Proofs of Claim or distributing the Settlement Fund.

1.22    "Notice Date" means the date of the mailing by the Claims Administrator of the Notice and Proof of Claim to all Class Members, which shall be within ten (10) days of the Court's order granting preliminary approval of this Stipulation.

1.23    "Order and Final Judgment" means the proposed order to be entered by the Court approving the Settlement, substantially in the form attached to this Stipulation as Exhibit B.

1.24    "Parties" means collectively the Lead Plaintiffs (on behalf of themselves and each of the Class Members) and Defendants. "Party" means individually the Lead Plaintiffs or Defendants.

1.25    "Person" means any individual, corporation, limited liability company, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.26    "Plaintiffs' Counsel" means any legal counsel who has appeared on behalf of any plaintiff in the Litigation.

508334_3

1.27    "Plan of Allocation" means the plan or formula of allocation of the Net Settlement Fund to Authorized Claimants, as set forth in the Notice and as approved by the Court. The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that the Plan of Allocation be approved in the particular form contained in the Notice attached to this Stipulation as Exhibit A-1. Any order or proceeding relating to the Plan of Allocation, or any appeal from any order or proceeding relating to the Plan of Allocation, shall not operate to terminate or cancel the Stipulation, or affect or delay the Effective Date and the finality of the Order and Final Judgment approving the Settlement.

1.28    "Preliminary Approval Order" means the proposed order to be entered by the Court preliminarily approving this Stipulation and directing notice of the Stipulation to the Class, substantially in the form of Exhibit A attached to this Stipulation.

1.29    "Proof of Claim" means the proposed Proof of Claim and Release form to be submitted by Class Members, substantially in the form attached to this Stipulation as Exhibit A-2, no later than ninety (90) days from the Notice Date, unless such period is extended by order of the Court.

1.30    "Released Claims" means any and all rights, demands, claims (including Unknown Claims), actions, and causes of action or liabilities of every nature and description whatsoever, in law or equity, whether arising under or pursuant to any federal, state, local, statutory, common law, foreign law, or any other law, rules or regulations, whether fixed or contingent, accrued or unaccrued, asserted or unasserted, liquidated or unliquidated, matured or unmatured, suspended or unsuspended, foreseen or unforeseen, whether or not concealed or hidden, whether class, derivative, representative and/or individual in nature, or in any other capacity, that: (a) Lead Plaintiffs or any member of the Class asserted, or could have asserted in the Litigation against any of the Released Persons; or (b) could have been asserted in the Litigation, or any other action or forum by Lead

- 11 -

Plaintiffs and/or the members of the Class or any of them against any of the Released Persons arising out of, or relating to, directly or indirectly, the purchase of Huffy publicly-traded securities during the Class Period, and the facts, matters, allegations, transactions, occurrences, courses of action, events, disclosures, statements, acts, circumstances, misrepresentations, omissions or other matters referenced in any claims, which were alleged or that could have been alleged (including, but not limited to, any claims that were raised against any Released Person) in the Complaint. "Released Claims" specifically excludes any and all claims to enforce the terms and conditions of this Stipulation.

  1.31 "Released Persons" means any and all of the Defendants, Huffy, their respective families, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, representatives, employees, attorneys, legal counsel, advisors and consultants (including, but not limited to, expert advisors and consultants who participated in any way in the Litigation), insurers and co-insurers (including, but not limited to, the Insurers and Contributing Insurers as defined in this Stipulation), reinsurers, financial or investment advisors and/or consultants, accountants, investment bankers, commercial bankers, engineers, agents, heirs, executors, trustees, general or limited partners or partnerships, personal representatives, estates, administrators, predecessors, successors and assigns, and any and all of Defendants' Affiliates.

  1.32 "Settlement" means the settlement agreement and release embodied by this Stipulation.

  1.33 "Settlement Consideration" means the sum of Eight Million Dollars ($8,000,000) funded by the Contributing Insurers, on behalf of the Defendants, to the escrow account as provided in ¶3(a) of this Stipulation.

508334_3

1.34    "Settlement Fund" means the sum of Eight Million Dollars ($8,000,000) funded by the Contributing Insurers, on behalf of the Defendants, to the escrow account as provided in this Stipulation, including any interest earned.  Such amount is paid in full and complete settlement of all the Released Claims.

1.35    "Settlement Hearing" means the final hearing to be held by the Court to determine whether to approve the Settlement of the Litigation as set forth in this Stipulation.

1.36    "Settling Parties" means, collectively, each of the Defendants and Lead Plaintiffs on behalf of themselves and each of the Class Members.

1.37    "Summary Notice" means the Summary Notice to be published, within ten (10) days of the Notice Date, in *Investor's Business Daily*, *Dayton Daily News*, and over the *Business Wire* or *PR Newswire*, substantially in the form attached to this Stipulation as Exhibit A-3, or as modified pursuant to agreement of the Parties or order of the Court.

1.38    "Taxes" means all taxes, including, but not limited to, any estimated taxes, interest, or penalties, arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriment that may be imposed upon the Released Persons with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes.

1.39    "Tax Expenses" means expenses and costs incurred in connection with the taxation of the Settlement Fund and operation and implementation of this Stipulation, including, without limitation, expenses of tax attorneys and/or accountants, and mailing and distribution costs and expenses related to filing (or failing to file) the returns described in this Stipulation.

1.40    "Unknown Claims" means any and all Released Claims which the Lead Plaintiffs or any Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, which, if known by him, her or it, would or might have affected his, her or

- 13 -

its settlement with and release of the Released Persons, or would or might have affected his, her or its decision not to object to this Settlement and/or not to exclude himself, herself or itself from the Class; and any and all claims released by Defendants against Lead Plaintiffs, Plaintiffs' Counsel, any other counsel for any other plaintiff or plaintiffs in the Litigation, and/or any or all members of the Class and their counsel, as described in ¶2.5 in this Stipulation, which any Defendant does not know or suspect to exist in his favor at the time of the release of the Released Persons, which, if known by him, would or might have affected his decision(s) with respect to the Settlement. Lead Plaintiffs or Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs and Class Members shall expressly, upon the Effective Date, be deemed to have fully, finally, and forever settled and released any and all Released Claims (including Unknown Claims), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Likewise, Defendants may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of those claims released by Defendants and described in ¶2.5 of this Stipulation, but Defendants shall expressly waive, and shall have fully, finally, and forever settled and released any and all claims described in ¶2.5 of this Stipulation (including Unknown Claims), known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or

- 14 -

additional facts. Lead Plaintiffs and Defendants acknowledge, and the Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in this Stipulation was separately bargained for and was a key element of the Settlement, of which this release is a material and essential part, and expressly waive the benefits of (i) the provisions of §1542 of the California Civil Code, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

and (ii) any and all provisions or rights conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.

## 2. Scope and Effect of This Stipulation

2.1     As a result of the extensive proceedings in the Litigation, which included broad written and oral discovery and briefing, and as a result of the extensive investigations conducted by Plaintiffs' Counsel and counsel for Defendants regarding issues that underlie and are common to the Litigation, the Settling Parties have agreed to fully, finally, and forever release, relinquish, and discharge all Released Claims against all Released Persons, and the Settling Parties have agreed that the Litigation shall be dismissed, with prejudice, and on the merits, pursuant to the terms and conditions of this Stipulation.

2.2     This Stipulation is intended by the Settling Parties to be a comprehensive settlement of the Litigation. The Settling Parties intend the total monetary consideration to be Eight Million Dollars ($8,000,000). The Settling Parties will request that the Court approve the Stipulation, and to recognize and acknowledge the Settling Parties' intent to fully, finally, and forever release,

508334_3

relinquish, and discharge all Released Claims against all Released Persons for a total consideration of Eight Million Dollars ($8,000,000).

2.3    The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Litigation and any and all Released Claims as against all Released Persons.

2.4    Upon the Effective Date, Lead Plaintiffs and the Class Members, on behalf of themselves and their attorneys, agents, beneficiaries, servants, representatives, employees, heirs, executors, administrators, trustees, successors, predecessors and assigns, and any Person claiming (now or in the future) by, through or on behalf of them, shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, and shall have covenanted not to sue any such Released Person with respect to any such Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting any such Released Claims against any Released Person.

2.5    Upon the Effective Date, the Released Persons shall be deemed to have fully, finally, and forever released, relinquished, and discharged each and all of the Lead Plaintiffs, Plaintiffs' Counsel, any other counsel for any other plaintiff or plaintiffs in the Litigation, and/or any or all members of the Class and their counsel from all claims (including Unknown Claims) arising out of or in any way relating to the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except to enforce the terms and conditions contained in this Stipulation.

2.6    Notwithstanding anything to the contrary in this Stipulation, the Released Claims do not include claims: (i) to enforce the Order and Final Judgment and the Settlement (or any other order fully and finally disposing of this Litigation), and any or all of the terms, including, but not limited to, the releases provided for in the Order and Final Judgment, or (ii) belonging to Defendants against their Insurers, or any other person not a party to this Stipulation.

- 16 -

508334_3

3.      **The Settlement Consideration**

a.      **The Settlement Fund**

In full settlement of the Released Claims, the Contributing Insurers, on behalf of the Defendants, shall pay Eight Million Dollars ($8,000,000), in cash, into a separate interest-bearing escrow account maintained by the Escrow Agent, on behalf of Lead Plaintiffs and the Class within thirty (30) days after the Court enters an order granting the preliminary approval of this Stipulation.

3.1     At no time, and under no circumstance, shall the Contributing Insurers be required under the terms of this Stipulation to pay more than Eight Million Dollars ($8,000,000).

3.2     The Settlement Fund shall be applied as follows:

(a)     to pay the Notice and Administration Costs as provided in this Stipulation;

(b)     to pay the attorneys' fee and expense award ordered by the Court and referred to in ¶¶6.1-6.5 of this Stipulation;

(c)     to reimburse Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4);

(d)     to the Taxes and Tax Expenses described in ¶3.7 of this Stipulation; and

(e)     to distribute the Net Settlement Fund to Authorized Claimants as provided in ¶¶5.1-5.16 of this Stipulation.

3.3     Other than cooperating as necessary with respect to the "relation-back election" as set out in ¶3.7 of this Stipulation, the Released Persons shall have no responsibility for maintaining or investing the Settlement Consideration or the Settlement Fund, for the establishment or maintenance of the escrow account, for the payment of Taxes or Tax Expenses, or for the distribution and/or administration of the Settlement Fund, and/or the administration of the Settlement. The Released Persons take no position with respect to the provisions of this Stipulation governing those issues. The Released Persons shall have no further or other liability or obligations to Lead Plaintiffs, Lead

- 17 -

Counsel, or any member of the Class with respect to the Released Claims, except as expressly stated in this Stipulation.

    **b.**  **The Escrow Agent**

  3.4  The Escrow Agent shall invest any funds in the Settlement Fund in excess of One Hundred Thousand Dollars ($100,000) in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government, or any of its agencies, and shall reinvest the proceeds of those instruments as they mature in similar instruments at their then-current market rates. Any funds held by the Escrow Agent in escrow pursuant to the terms of this Stipulation in an amount of less than One Hundred Thousand Dollars ($100,000) shall be held in an interest-bearing bank account insured by the FDIC. The Escrow Agent shall bear all risks related to investment of the Settlement Fund and shall indemnify the Released Persons and hold them harmless from and against any losses related to investment of the Settlement Fund, and shall comply with the terms set forth in ¶11.3 of this Stipulation.

  3.5  All funds held by the Escrow Agent pursuant to the terms of this Stipulation shall be deemed and considered to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed or returned to the Person(s) paying the same pursuant to this Stipulation and/or further order(s) of the Court.

  3.6  The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of counsel for Defendants, the Contributing Insurers, and Lead Counsel.

    **c.**  **Taxes and Tax Expenses**

  3.7  (a)  The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Reg. §1.468B-2(k)(1). In addition, the Escrow Agent shall timely make such elections as necessary or advisable to

- 18 -

carry out the provision of this ¶3.7, including the "relation-back election" (as defined in Treasury Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare timely and properly and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file, or cause to be timely and properly filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶3.7(a) of this Stipulation) shall be consistent with this ¶3.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶3.7(c) of this Stipulation.

(c)     All Taxes and Tax Expenses shall be paid out of the Settlement Fund. Released Persons shall have no liability or responsibility for the payment of any Taxes or Tax Expenses. The Escrow Agent shall indemnify and hold each of the Released Persons harmless for any Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund, and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything within this Stipulation to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of

- 19 -

adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Reg. §1.468B-2(l)(2)).

**4.     Preliminary Court Approval, Notice to Class Members, and Settlement Hearing**

4.1     As soon as practicable following execution of this Stipulation, Lead Plaintiffs shall submit the Stipulation, together with its Exhibits, to the Court and shall apply for entry of a Preliminary Approval Order, substantially in the form attached as Exhibit A, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, and approval for the mailing of the Notice and the Proof of Claim and publication of the Summary Notice, substantially in the forms attached as Exhibits A-1, A-2, and A-3.

4.2     Lead Plaintiffs shall request that, after the Notice and the Proof of Claim are mailed and the Summary Notice is published, the Court hold the Settlement Hearing to consider and determine whether to approve the Settlement as fair, reasonable, and adequate, and whether the Order and Final Judgment, substantially in the form of Exhibit B attached to this Stipulation, should be entered approving the Settlement, as set forth in this Stipulation, and dismissing the Litigation with prejudice.  At or after the Settlement Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application, as discussed in ¶¶5 and 6 of this Stipulation.

**5.     Administration and Distribution of the Net Settlement Fund to Authorized Claimants**

5.1     The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court.  The Claims Administrator, subject to such supervision and direction of the Court and/or Lead Counsel as may be necessary or as circumstances may require, shall administer the Settlement, including administering and calculating the claims submitted by Class Members, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants. Defendants, through

their counsel, shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including providing all information reasonably obtainable relating to Huffy's transfer records concerning the identity of Class Members and their transactions. Defendants and their counsel do not guarantee, and are not obligated to guarantee, the accuracy of any information reasonably obtained and provided to Plaintiffs' Counsel. Any information reasonably obtainable by Defendants, through their counsel, shall be provided to Plaintiffs' Counsel within thirty (30) days following the date of execution of this Stipulation.

5.2    All reasonable costs and expenses of notice to Class Members, and administration of the Settlement Fund, escrow fees, taxes, custodial fees, and expenses incurred in connection with processing Proofs of Claim or distributing the Net Settlement Fund (the "Notice and Administration Costs"), shall be paid from the Settlement Fund. Upon the establishment and funding of the Settlement Fund, a sum not to exceed Two Hundred Thousand Dollars ($200,000) of the Settlement Fund shall be allocated for the express purpose of providing notice of the Settlement and to administer the Settlement pursuant to the terms of the Preliminary Approval Order ("Notice and Administration Fund"), and unspent funds shall be returned to the Settlement Fund. Funds may be disbursed from the Notice and Administration Fund for these purposes without further approval of Defendants or the Court. The Notice and Administration Fund shall be administered by the Escrow Agent as part of the Settlement Fund. Upon the Effective Date, Lead Counsel, without further approval of Defendants or the Court, may pay from the Settlement Fund any Notice and Administration Costs associated with the administration of the Settlement, the processing of submitted claims, and distribution of the Net Settlement Fund to Authorized Claimants in excess of the Notice and Administration Fund.

5.3    The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation.

- 21 -

5.4     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim, as defined in the Plan of Allocation.

5.5     Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her, or its recognized claim compared to the total recognized claims of all Authorized Claimants. Released Persons shall have no involvement in reviewing or challenging claims, and shall take no position with respect to, and have no responsibility for, the Plan of Allocation or implementation of the Plan of Allocation.

5.6     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice.

5.7     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Proof of Claim (substantially in the form of Exhibit A-2 attached to this Stipulation), supported by such documents as are designated therein, or such other documents or proof as Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date specified in the Notice, unless such period is extended by order of the Court. Any Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Class Member is approved), and shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and

- 22 -

the releases provided for in this Stipulation and will be barred from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel may, in their discretion, accept for processing late submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. A Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by First-Class Mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

(d)     Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Class Members to remedy the curable deficiencies in the Proof of Claim submitted. The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Class Members whose Proofs of Claim it proposes to reject in whole or in part, setting forth the reasons for the proposed rejection, and shall indicate in such notice that the Class Member whose claim is to be rejected has the right to a review by the Court if the Class Member so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Class Member whose claim has been rejected, in whole or in part, desires to contest such rejection, the Class Member must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Class Member's grounds for contesting the rejection

508334_3

along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall present the request for review to the Court.

5.8     Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to the Class Member's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Class Member's status as a Class Member and the validity and amount of the Class Member's claim. No discovery shall be allowed on the merits of the Litigation or Settlement in connection with processing of the Proofs of Claim.

5.9     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for in this Stipulation, and will be barred from bringing any action against the Released Persons concerning the Released Claims.

5.10    All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation, and the determination of all controversies relating to the claims, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the continuing jurisdiction of the Court.

5.11    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) payment of attorneys' fees and expenses, as provided in ¶6.1 of this Stipulation; (ii) all claims have been processed, and all Class Members whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (iii) all objections with

- 24 -

respect to all rejected or disallowed claims have been resolved by the Court, and all appeals have been resolved or the time for such appeals has expired; and (iv) all costs of administration have been paid.

5.12    If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution; (ii) second, to pay any additional Notice and Administrative Costs, including attorneys' fees and expenses as may be approved by the Court; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If, after six (6) months following such second distribution, if undertaken, or if such second distribution is not undertaken, any funds remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, such funds shall be contributed to Legal Aid of Southwestern Ohio, an Internal Revenue Code Section 501(c)(3) charity, whose principal beneficiaries are located in Dayton, Ohio, or the surrounding geographic region, and is unaffiliated with Defendants, Defendants' Affiliates, Lead Plaintiffs, Lead Counsel, or Liaison Counsel.

508334_3

5.13    The Claims Administrator shall maintain all paper copies of Proof of Claim forms for one year after distribution of the Net Settlement Fund, and all electronic copies of Proof of Claim forms for three years after distribution of the Net Settlement Fund.

5.14    If all conditions of the Stipulation are satisfied and the Effective Date occurs, then no portion of the Settlement Fund will be returned to such Person(s) that paid the Settlement Consideration.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

5.15    No Person shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Defendants, the Released Persons, or their respective counsel based on the administration of the Settlement, including, without limitation, the processing of claims and distributions made in accordance with this Stipulation and the Settlement contained in this Stipulation, the Plan of Allocation, or any other order(s) of the Court.

5.16    Any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth in this Stipulation, or any other order(s) entered by the Court pursuant to the Stipulation

508334_3

6.      **Plaintiffs' Counsel's Fees and Expenses**

6.1      Lead Counsel will submit a Fee and Expense Application to the Court for an award from the Settlement Fund of attorneys' fees and expenses. Defendants take no position with respect to the Fee and Expense Application. Whatever amount is awarded by the Court is within the sole discretion of the Court, and, if the award is less than the amount sought by Lead Counsel, this decision by the Court will not be a basis for setting aside the Settlement. Such attorneys' fees and expenses, as are awarded by the Court, shall be paid from the Settlement Fund to Lead Counsel immediately upon award by the Court, notwithstanding any objection, appeal or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's joint and several obligation to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any successful collateral attack, the fee or cost award is reduced or reversed. Lead Counsel shall allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contribution of such counsel to the prosecution and settlement of the Litigation.

6.2      In the event that the Effective Date does not occur, or the Order and Final Judgment is reversed or modified, the order approving the Fee and Expense Application is reversed or modified, or the Stipulation is terminated or cancelled for any reason, and in the event that any attorneys' fees, expenses, and costs have been paid to any extent, Plaintiffs' Counsel who received such fees, expenses, and costs shall, within five (5) days from receiving notice of such reversal, modification, termination or cancellation, have a joint and several obligation to refund to the Settlement Fund the fees, expenses, and costs previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.

508334_3

6.3     Each of Plaintiffs' Counsel, as a condition of receiving any fees and expenses, on behalf of itself and each partner and/or shareholder, agrees that it and its partners, shareholders, or both, are subject to the jurisdiction of the Court for the purpose of enforcing this Stipulation. Without limitation, each such law firm and its partners, shareholders, or both, agree that the Court may, upon application of any Defendant or Contributing Insurer, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of, or may impose sanctions for, contempt against any of them should such law firm fail timely to repay fees and expenses pursuant to this Stipulation.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees, expenses, and costs to be paid out of the Settlement Fund are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating to the Stipulation or reversal or modification of it, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Order and Final Judgment approving the Stipulation and the Settlement set forth herein.

6.5     The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and expenses to Plaintiffs' Counsel over and above payment of the Eight Million Dollars ($8,000,000) Settlement Consideration to the Settlement Fund. The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim to the payment of attorneys' fees and expenses, of any Fee and Expense Application, or any award relating to the payment of attorneys' fees and expenses that the Court may make in the Litigation.

7. **Terms of Preliminary Approval Order**

7.1    As soon as practicable after the Settling Parties execute this Stipulation, counsel for the Settling Parties shall apply to the Court for entry of the Preliminary Approval Order, substantially in the form attached to this Stipulation as Exhibit A.

8. **Terms of Order and Final Judgment**

8.1    If the Settlement contemplated by this Stipulation is preliminarily approved by the Court, notice is effectuated and a final hearing has been held, then counsel for the Settling Parties shall request that the Court enter an Order and Final Judgment, substantially in the form attached to this Stipulation as Exhibit B.

9. **Supplemental Agreement**

9.1    Simultaneously with this Stipulation, Lead Plaintiffs and Defendants are executing a confidential "Supplemental Agreement" setting forth certain conditions under which this Stipulation may be withdrawn or terminated, at the discretion of Defendants, if potential Class Members who meet certain criteria exclude themselves from the Class. Pursuant to the Supplemental Agreement, Defendants have the option (which option must be exercised unanimously) to terminate the Settlement in the event that the aggregate number of shares of Huffy publicly-traded securities purchased during the Class Period by Class Members who would otherwise be entitled to participate as members of the Class, but who timely and validly request exclusion, equals or exceeds a certain percentage of the total number of shares of Huffy publicly-traded securities traded during the Class Period, as set forth in the Supplemental Agreement.

9.2    The Supplemental Agreement shall not be filed with the Court unless and until the Court asks the Parties to do so or a dispute arises between Lead Plaintiffs and Defendants concerning the interpretation or application of the Supplemental Agreement. In either of those events, the Supplemental Agreement shall be filed and maintained by the Court under seal.

9.3     In the event that Defendants elect to terminate the Stipulation in accordance with the Supplemental Agreement and ¶¶9.1-9.3 of this Stipulation, and such withdrawal is not nullified in accordance with the terms of the Supplemental Agreement, the Stipulation shall be withdrawn and terminated and deemed null and void, and the provisions of ¶11 shall apply.

**10.     Effective Date of Settlement**

10.1     The Effective Date of the Settlement shall be one day following the latest of the following events:

(a)     entry of the Preliminary Approval Order in all material respects in the form attached to this Stipulation as Exhibit A;

(b)     payment of the Settlement Consideration to the escrow account by the Contributing Insurers, on behalf of Defendants;

(c)     approval by the Court of the Settlement, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(d)     expiration of the time for Defendants to exercise their option to terminate the Stipulation in accordance with the terms of the Supplemental Agreement described in ¶¶9.1-9.3 of this Stipulation, without the exercise of that option; and

(e)     the Court has entered the Order and Final Judgment, which approves the terms and conditions of the Settlement, and the Order and Final Judgment has become Final.

10.2     Upon the occurrence of all of the events referenced in ¶10.1 of this Stipulation, any and all remaining interest or right of Defendants and the Contributing Insurers in or to the Settlement Fund, if any, shall be extinguished.

**11.     Termination of Settlement**

11.1     Defendants' counsel or Lead Counsel shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so to all other Settling Parties

- 30 -

within thirty (30) days of: (i) the Court's declining to enter the Preliminary Approval Order in any material respect; (ii) the Court's refusal to approve this Stipulation or any material part of it; (iii) the Court's declining to enter the Order and Final Judgment in any material respect; or (iv) the date upon which the Order and Final Judgment is modified or reversed in any material respect by any court. Lead Counsel shall also have the right to terminate the Settlement no later than thirty (30) days after the Contributing Insurers' failure to pay timely the Settlement Consideration.

11.2     In the event that the Stipulation is not approved, or is terminated, cancelled, or fails to become effective for any reason, the Settling Parties shall be deemed to have reverted to their respective statuses in the Litigation as of January 12, 2010, and the settlement Class shall be deemed decertified by operation of law. In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

11.3     The Settlement Fund, including, but not limited to, any amounts not spent from the $200,000 Notice and Administration Fund, plus all accumulated interest, less any Taxes and Tax Expenses actually incurred or due and owing in connection with the Settlement shall be refunded within five (5) days of the effect of termination or cancellation, directly to the Contributing Insurers, *pro rata* in accordance with the respective amounts paid by the Contributing Insurers.

11.4     No order of the Court or modification or reversal on appeal of any order of the Court concerning any Plan of Allocation or the amount of any attorneys' fee and expense award approved by the Court shall constitute grounds for cancellation or termination of the Stipulation.

**12.     No Admission of Wrongdoing**

12.1     Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including all Exhibits, all

- 31 -

508334_3

negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement, shall not, in this or any other court, administrative agency, arbitration forum, or other tribunal (including, but not limited to, the United States Securities and Exchange Commission and the United States Department of Justice), constitute an admission of, or evidence of, or be deemed to create any inference of, (i) any acts of wrongdoing or lack of wrongdoing; (ii) any liability on the part of any of Defendants or Released Persons to Lead Plaintiffs, the Class, or anyone else; (iii) any deficiency of any claim or defense that has been or could have been asserted in this Litigation; (iv) any damages, or lack of damages, suffered by Lead Plaintiffs, the Class, or anyone else; or (v) that the Settlement Consideration (or any other amount) represents the amount that could or would have been recovered from Defendants in the Litigation if the Litigation was not settled at this point in time.

      12.2    The fact and terms of this Stipulation, including all Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any and all acts performed or documents signed in connection with the Settlement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of the Settlement, including, but not limited to, the Preliminary Approval Order, the Notice, the Order and Final Judgment, and the releases provided for in the Order and Final Judgment. Any Released Persons may file the Stipulation, the Preliminary Approval Order, the Notice, and the Order and Final Judgment in any other action or proceeding that may be brought against him, her or it in any forum to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release and discharge, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. Lead Plaintiffs understand,

- 32 -

acknowledge, and agree that Defendants have denied and continue to deny any and all claims of wrongdoing, liability, and damages alleged in the Litigation.

### 13. Miscellaneous Provisions

13.1    All of the Exhibits attached to this Stipulation are material and integral parts of it, and are incorporated by reference as though fully set forth here.

13.2    The Settling Parties: (i) acknowledge that it is their intent to consummate this Settlement; (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation; and (iii) agree to exercise their best efforts to accomplish the terms and conditions of this Stipulation.

13.3    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation, including, but not limited to, all facts and claims that were asserted or that could be asserted by Lead Plaintiffs and the Class Members against the Released Persons with respect to the Released Claims, and shall not be deemed an admission or concession of any nature whatsoever by any Settling Party as to the merits of any claim or defense. The Settling Parties agree that the amount paid to the Settlement Fund and all the other terms of the Settlement were negotiated at arm's length in good faith by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with experienced legal counsel. Lead Plaintiffs, on behalf of themselves and the Class, and Released Persons, agree not to assert in any forum that the Litigation was brought by Lead Plaintiffs, or defended by Defendants, in bad faith or without a reasonable basis. The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Litigation, and the Order and Final Judgment shall contain a provision that during the course of the Litigation, Lead Plaintiffs, on behalf of themselves and the Class, and Released Persons, and their

- 33 -

respective counsel, at all times related to the Litigation complied with and satisfied the requirements of Federal Rule of Civil Procedure 11.

13.4   Defendants may file the Stipulation, the Order and Final Judgment, or both, in any action that may be brought against them to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.5   All agreements made and orders entered during the course of this Litigation relating to the confidentiality of documents and information, including, but not limited to, the October 8, 2008, Stipulation and Protective Order signed by the Court in the Litigation, shall survive this Stipulation pursuant to their terms.

13.6   This Stipulation may not be modified or amended in any way, nor may any of its provisions be waived except by a writing signed by or on behalf of all Settling Parties or their respective attorneys, or successors-in-interest.

13.7   The headings and captions in this Stipulation are used for the purpose of convenience only and are not meant to have any legal effect on the meaning or interpretation of this Stipulation or any of its terms or provisions.

13.8   The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court and the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation and for the purpose of entering orders providing for awards of attorneys' fees and expenses to Plaintiffs' Counsel.

13.9   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

13.10  This Stipulation, the Exhibits attached to it, and the Supplemental Agreement constitute the entire agreement among the Settling Parties concerning the Settlement of the

508334_3

Litigation, and no representations, warranties, or inducements have been made by any party to the Settlement concerning this Stipulation and its Exhibits and the Supplemental Agreement other than those contained and memorialized in such documents. Except as provided in this Stipulation, each Settling Party shall bear its own costs.

13.11 This Stipulation may be executed by facsimile and in one or more counterparts. All executed counterparts shall be deemed to be one and the same instrument provided that counsel for the Settling Parties shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

13.12 This Stipulation shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Settling Parties, including any and all Released Persons and any corporation, partnership or other entity into or with which any Settling Party or Released Person may merge, consolidate or reorganize.

13.13 Any notice required by this Stipulation shall be submitted in writing and delivered either by overnight mail, facsimile or in person as follows:

        If to counsel for Plaintiffs:

        Dennis J. Herman
        ROBBINS GELLER RUDMAN
         & DOWD LLP
        100 Pine Street, Suite 2600
        San Francisco, CA 94111
        Telephone: (415) 288-4545
        Facsimile: (415) 288-4534
           and
        Richard S. Wayne
        STRAUSS & TROY
        Federal Reserve Building
        150 East Fourth Street
        Cincinnati, OH 45202-4018
        Telephone: (513) 621-2120
        Facsimile: (513) 241-8259

If to counsel for Defendants:

D. Jeffrey Ireland
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3710
Facsimile: (937) 227-3717

13.14    The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of Ohio without regard to any choice of law principle, except to the extent that federal law requires that federal law governs.

13.15    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

13.16    All counsel and any other Person executing this Stipulation and any of its Exhibits, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

13.17    The Settling Parties and their counsel agree that they will refrain from disparaging the Settlement or each other with respect to the Litigation in any press releases or statements to the media.

13.18    Except as otherwise provided in this Stipulation, any period of time prescribed by this Stipulation or any other document related to the Settlement set forth in this Stipulation shall be computed in accordance with the then-current version of Federal Rule of Civil Procedure 6.

- 36 -

508334_3

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by
their duly authorized attorneys, dated May 12, 2010.

ROBBINS GELLER RUDMAN
   & DOWD LLP
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
S. ASHAR AHMED

_____
        DENNIS J. HERMAN

100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
dennish@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Plaintiffs

STRAUSS & TROY
RICHARD S. WAYNE (0022390)
WILLIAM K. FLYNN (0029536)
THOMAS P. GLASS (00623820)
Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
Telephone: 513/621-2120
513/241-8259 (fax)
rswayne@strausstroy.com

Liaison Counsel

- 37 -

508334_3

FARUKI IRELAND & COX P.L.L.
D. JEFFREY IRELAND (0010443)
MARTIN A. FOOS (0065762)
ERIN E. RHINEHART (0078298)


D. JEFFREY IRELAND

500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: 937/227-3710
937/227-3717 (fax)
djireland@ficlaw.com

Attorneys for Defendants

- 38 -

508334_2

CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 24, 2010.

s/ Dennis J. Herman
DENNIS J. HERMAN

ROBBINS GELLER RUDMAN
& DOWD LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone: 415/288-4545
415/288-4534 (fax)
E-mail: DennisH@rgrdlaw.com

# Mailing Information for a Case 3:05-cv-00028-WHR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Sayed Ashar Ahmed**
  aahmed@rgrdlaw.com,ptiffith@rgrdlaw.com

- **James Edward Arnold**
  jarnold@arnlaw.com,tashby@arnlaw.com

- **Aelish M Baig**
  aelishb@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **William Kendall Flynn**
  wkflynn@strausstroy.com,rlshapiro@strausstroy.com,fmtuttle@strausstroy.com

- **Martin A Foos**
  mfoos@ficlaw.com

- **Nelson Eugene Genshaft**
  neg@columbuslawyer.net

- **Thomas P Glass**
  tpglass@strausstroy.com,dkhilling@strausstroy.com

- **Dennis Jeremy Herman**
  dennish@rgrdlaw.com,AelishB@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Donald Jeffrey Ireland**
  djireland@ficlaw.com,lchasteen@ficlaw.com

- **Jack Landskroner**
  jack@lgmlegal.com,debra@lgmlegal.com

- **Willow E Radcliffe**
  willowr@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Erin Rhinehart**
  erhinehart@ficlaw.com

- **Richard Stuart Wayne**
  rswayne@strausstroy.com,fmtuttle@strausstroy.com,acjansen@strausstroy.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into

your word processing program in order to create notices or labels for these recipients.

**Alaska Hotel Group**
150 E. Fourth Street
Cincinnati, OH 45202

**Arnold Buehler**
Landskroner-Grieco-Madden, Ltd.
1360 West 9th Street, Ste. 200
Cleveland, OH 44113